**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:19-cv-23575-UU

TAMPA HAMPTON, et al.,

    Plaintiffs,
v.

TEM ENTERPRISES, INC.,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Complaint (D.E. 12) (the "Motion"). The Court has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

**I.     Background**

Unless otherwise indicated, the following facts are taken from the Complaint. D.E. 1 (the "Complaint").

This age discrimination case arises from the plaintiffs' termination from employment by defendant TEM Enterprises, Inc., d/b/a Xtra Airways ("Xtra"). Xtra is a Florida corporation headquartered in Coral Gables, Florida. *Id.* ¶ 13. Xtra, a private charter airline, employed the Plaintiffs as flight attendants. *Id.* ¶¶ 17–20. Plaintiff Tampa Hampton is a resident of Chandler, Arizona. *Id.* ¶ 9. Plaintiff Doris Skaarer is a resident of Harlingen, Texas. *Id.* ¶ 10. Plaintiff Debby Sundquist is a resident of Wendover, Nevada. *Id.* ¶ 11.

At the time of their termination, the Plaintiffs were stationed at Xtra's base in Wendover, Nevada. *Id.* ¶ 23. They had all been transferred to the Wendover, Nevada base in or around May 2016. *Id.* ¶ 25. None of the Plaintiffs have alleged that they are Florida citizens or that they were

1

terminated while they were present in the State. Xtra's entire management team, however—including Plaintiffs' supervisor—was located in Florida. *Id.* ¶¶ 19, 21.

Xtra terminated all three Plaintiffs' employment effective February 13, 2017. *Id.* ¶ 25. Xtra claimed that it had lost a contract involving the Wendover base and therefore it was not "in a position to retain" Plaintiffs' employment. *Id.* At the time of their termination, (1) Ms. Sundquist was 60 years old, had worked for Xtra for 23 years, and was number one in seniority for all flight attendants; (2) Ms. Hampton was 68 years old, had worked for Xtra for six years, and was the oldest flight attendant working for Xtra; and (3) Ms. Skaarer was 58 years hold and had worked for Xtra for two years. *Id.* ¶¶ 28–29, 31.

Xtra's standard practice when a base closed was to transfer the base's flight attendants to other active or new bases. *Id.* ¶ 32. Therefore, when Plaintiffs learned that the Wendover base was closing, they repeatedly asked Xtra where they would be transferred. *Id.* ¶ 27. Xtra ignored their requests for information. *Id.* Ultimately, Xtra completely denied Plaintiffs the opportunity to transfer to a new base (despite its standard practice) and terminated their employment instead. *Id.* ¶¶ 25, 33, 38. Xtra informed Plaintiffs that they could "reapply" for company jobs but they would lose any seniority that they had accrued. *Id.* ¶¶ 34, 38.

Xtra also told Plaintiffs that there were no open positions at the time of their termination. *Id.* However, three weeks prior to terminating Plaintiffs' employment, Xtra advertised that it was hiring for new flight attendants—March was one of Xtra's busiest times due to numerous charters associated with the "March Madness" college basketball season. *Id.* ¶¶ 39–40. Further, around the same time of the Wendover base closure, Xtra opened a new base in Laughlin, Nevada, to service casino charters. *Id.* ¶ 35. Plaintiffs were not offered the opportunity to transfer to the Laughlin base. *Id.* ¶ 36. Instead, younger flight attendants were stationed at that base. *Id.* ¶ 37.

On the same day Plaintiffs' termination was effective, Xtra started a new class of flight attendants. *Id.* ¶ 41. Xtra started another new class of flight attendants in March 2017, shortly after Plaintiffs were terminated. *Id.* ¶ 42. Plaintiffs allege that Xtra wanted to get rid of the older flight attendants because it wanted a "new look" and that Xtra made its desire for a "new look" clear during a training class. *Id.* ¶¶ 43–44.

## II.   Procedural Background

On August 26, 2019, Plaintiffs filed their two-count Complaint against Xtra. The first count is a claim under Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the second count is a claim under the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01 *et seq. See id.* The thrust of both claims is that Xtra committed age discrimination by terminating Plaintiffs because of their ages while retaining and hiring substantially younger similarly-situated flight attendants. *See id.* ¶¶ 50, 55.

On August 27, 2019, the Court entered its Order to Show Cause why Plaintiffs—who were not Florida citizens and were not present in the state when the alleged discrimination occurred—are in the class of persons meant to be protected by the FCRA. D.E. 4 (the "Show Cause Order").[1] Plaintiffs responded to the Show Cause Order on September 10, 2019. D.E. 6. The Court gave Xtra the opportunity to reply to Plaintiffs' response, D.E. 9, which Xtra did on October 15, 2019, D.E. 14.

Independent of briefing on the Show Cause Order, Xtra filed the instant Motion, arguing that (1) Plaintiffs have failed to state a claim under either the ADEA or the FCRA because they do not sufficiently allege that they were terminated as a result of discrimination, and (2) Plaintiffs

---

[1] The Show Cause Order also required Plaintiffs to explain why their claims should not be severed. *See id.* The issue of severance is not presented in the current Motion, though Xtra reserved the right to seek severance after the pleadings close. *See* Mot. at 1 n.2.

3

lack standing to sue under the FCRA because they are not Florida citizens and were not employed in Florida. *See generally* Mot.  The Motion is now fully briefed and ripe for disposition.

### III. <u>Legal Standard</u>

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679.

**IV.     Discussion**

    A. Failure to State a Claim

Xtra characterizes the Complaint as bringing a "reduction in force" ("RIF") claim. To ultimately prove a *prima facie* claim of discriminatory termination in connection with a RIF, a plaintiff must show: (1) the plaintiff is a member of a protected class; (2) she was terminated; (3) she was qualified for another position at the time of the termination; and (4) there is evidence from which a reasonable factfinder could conclude the employer intended to discriminate in failing to consider the plaintiff for another position. *See, e.g.*, *Crisman v. Fla. Atl. Univ. Bd. of Trs.*, 659 F. App'x 572, 578 (11th Cir. 2016); *Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 965 (11th Cir. 2012); *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567–78 (11th Cir. 1992).[2] Xtra argues that Plaintiffs have not sufficiently alleged the fourth element of a *prima facie* claim because Plaintiffs do not allege that younger flight attendants were treated more favorably upon the alleged RIF (the closure of the Wendover base). *See* Mot. at 2–4.

However, "[a] complaint asserting employment discrimination under the ADEA need not contain specific facts establishing a *prima facie* case." *Buchanan v. Delta Air Lines, Inc.*, 772 F. App'x 639, 641 (11th Cir. 2018) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). The burden-shifting framework in employment discrimination cases "is an evidentiary standard rather than a pleading standard." *Id.* (citing *Swierkiewicz*, 534 U.S. at 510). "Although an employment discrimination complaint need not allege facts sufficient to make out a *prima facie* case, it must nonetheless provide enough factual matter to plausibly suggest intentional

---

[2] These elements are equally applied for Plaintiffs' ADEA and FCRA discrimination claims. *See, e.g.*, *Jones v. United Space Alliance, L.L.C.*, 494 F.3d 1306, 1310 (11th Cir. 2007); *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1266 (11th Cir. 2014).

discrimination." *Id.* (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam)).

In *Buchanan*, the Eleventh Circuit reversed a district court's order dismissing the plaintiff's complaint for failure to establish a *prima facie* case under the ADEA's burden-shifting framework as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.* at 642. The Eleventh Circuit noted that the typical 12(b)(6) standard applies, such that the plaintiff needed only to plausibly allege that her age was the "but-for" cause of the adverse employment decision giving rise to her complaint. *See id.* at 641–42. The plaintiff in *Buchanan* had alleged, among other things, that her employer: "(i) fabricated a reason for suspending and terminating her, (ii) fired other older workers for trivial reasons, (iii) prioritized hiring younger workers, and (iv) was in the process of replacing its older workers with younger workers." *Id.* at 641. Thus, "considered together, these allegations are enough to make out a plausible claim that the stated reasons for her termination were pretextual and that her age was the cause of her termination." *Id.* at 641–42.

So too here. Plaintiffs plausibly allege that Xtra's given reason for terminating their employment—that is, the closure of the Westover base—was pretextual and that their age was the cause of their termination. Plaintiffs' allegations permit the plausible inference that Xtra was not actually reducing its force overall; in fact, Xtra was growing its work force (at least in part to accommodate the busy "March Madness" season) and was actively recruiting and hiring "substantially younger" flight attendants as part of its "new look." And while around the same time the Wendover base closed, Xtra opened the new Laughlin base to service casino charters, Xtra did not provide Plaintiffs the opportunity to transfer to that base—even though Xtra's standard practice for base closures was to transfer the closing base's flight attendants to new or active bases. Instead, Xtra staffed the Laughlin base with younger flight attendants. These


allegations, taken together, permit the plausible inference that but for Plaintiffs' age, they would not have been terminated from Xtra's employment. *See also Taylor v. Canteen Corp.*, 69 F.3d 773, 780 (7th Cir. 1995) (though "an employer incurs no duty to transfer an employee to another position when it reduces its work force for economic reasons," the employer "may not favor younger employees over older ones by finding new positions only for younger workers"). Plaintiffs have stated a viable discrimination claim.

### B. Plaintiffs' Authority to Sue Under the FCRA

As Xtra notes, there is a dearth of case law on application of the FCRA to non-Floridian plaintiffs.[3] *See* Mot. at 5. However, the statute itself provides that the FCRA's purpose is "to secure for all <u>individuals within the state</u> freedom from discrimination because of…age…and to promote the interests, rights, and privileges of <u>individuals within the state</u>." Fla. Stat. § 760.01(2)[4] (emphasis added); *see also Parry v. Outback Steakhouse of Fla., Inc.*, No. 8:06-CV-00804-T-17TBM, 2006 WL 2919018, at *4 (M.D. Fla. Oct. 11, 2006) (noting the FCRA's legislative intent "to protect <u>Florida citizens</u> from Florida employers and their subsidiaries" (emphasis added)); *Frey v. Amor Corr. Health Servs., Inc.*, No. CIV 06-60049, 2006 WL 4535802, at *2 (S.D. Fla. Mar. 10, 2006) (FCRA aims "to provide <u>Florida's citizens</u> with protection against discrimination and

---

[3] The Supreme Court has occasionally described this kind of an inquiry in terms of "statutory standing." *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014). And indeed, Xtra couches its argument in terms of "standing." *See* Mot. at 4–6; D.E. 18 at 2–3. However, the Supreme Court has noted that such a label is "misleading, since 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the court's statutory or constitutional *power* to adjudicate the case." *Lexmark Int'l, Inc.*, 572 U.S. at 128 n.4 (emphasis in original) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002)). Though the label might be troublesome, this Court's analysis will focus on Plaintiffs' "authority" to sue—that is, whether the FCRA "extend[s] to plaintiffs like" Plaintiffs here. *See id.* at 129.

[4] The full text of Section 760.01(d) reads:

> The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

retaliation. These protections are afforded to <u>Florida's residents</u> independent of similar rights provided under federal law." (emphasis added, internal citations omitted)). Plaintiffs argue that because the FCRA must "be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved," Fla. Stat. § 760.01(3), it should be construed to authorize Plaintiffs to sue under the FCRA in order to discourage a Florida-based company from making discriminatory decisions in Florida. D.E. 16 at 5–8.

As the Eleventh Circuit has noted, "the very purpose of the FCRA" is "protecting Floridians within the State from invidious discrimination." *Sinclair v. De Jay Corp.*, 170 F.3d 1045, 1047 (11th Cir. 1999). Because it is a protective statute, rather than a punitive one, the focus should be on the alleged victim of the discrimination: the employee. *Cf. id.* at 1046–47 (where plaintiff worked in Florida office of a company that had approximately 100 employees nationwide, but fewer than 15 employees in Florida, employer could still be sued as an "employer" under the FCRA; the employer's proposed contrary interpretation "fails fairly to address the legislative intent of the FCRA" which is to protect "Floridians within the State"); *accord Mousa v. Lauda Air Luftfahrt, A.G.*, 258 F. Supp. 2d 1329, 1340–41 (S.D. Fla. 2003) (foreign citizens who work exclusively abroad can be counted toward the fifteen-employee jurisdictional count).

*Sinclair* and *Mousa* address different inquiries than the inquiry before the Court: those cases deal with who may be sued under the FCRA, not who may sue. Even though Plaintiffs would be counted in deciding whether Xtra is an FCRA "employer," this does not mean that they can avail themselves of the right to sue afforded by the Florida Legislature to "individuals within the state." Plaintiffs' proposed interpretation would write those four words out of the statute. That result is impermissible. *See United States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("It is our

duty to give effect, if possible, to every clause and word of a statute…." (internal quotations omitted)).

Here, there is no claim that any of the Plaintiffs ever lived in Florida or worked in Florida other than for some "required training" with Xtra, Compl. ¶ 22. Plaintiffs were not "individuals within the state" when they were terminated. Nor have Plaintiffs alleged that they have some other significant relationship with Florida that would give the state an interest in protecting them. *Cf. Parry v. Outback Steakhouse of Fla., Inc.*, No. 8:06-CV-00804-T-17TBM, 2006 WL 2919018, at *1, *4 (M.D. Fla. Oct. 11, 2006) (though plaintiff was allegedly harassed while working at Outback restaurant in the Cayman Islands, the plaintiff had lived in Florida since she was a baby prior to being transferred to the Cayman Islands location, initially worked for Outback in Florida for seven to eight years, and during the entire period she worked abroad, she maintained her Florida driver license, was a registered Florida voter, and owned a motor vehicle registered in Florida; therefore, the court would apply the FCRA "extraterritorially to Florida citizens working abroad"). The Court finds that Plaintiffs have not adequately alleged that they are authorized to sue under the FCRA.

At this stage, the Court typically would grant Plaintiffs leave to amend the Complaint to allege (if they could) facts demonstrating that they are proper FCRA plaintiffs. However, in the Court's Show Cause Order, the Court already gave Plaintiffs that opportunity: "Plaintiffs SHALL show cause in writing…why they believe they are within the class of individuals that the FCRA is meant to protect…. Alternatively, Plaintiffs may file an amended complaint…to assuage the Court's concerns on [this ground]." Show Cause Order at 2. Plaintiffs declined to amend their Complaint. As a result, the Court finds that granting leave to amend the FCRA claim would be futile.

### V. Conclusion

For the reasons discussed *supra*, it is hereby

ORDERED AND ADJUDGED that the Motion, D.E. 4, is GRANTED IN PART AND DENIED IN PART. Count Two of the Complaint, D.E. 1, is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that Xtra SHALL file its answer to the remaining portions of the Complaint **on or before December 19, 2019**.

DONE AND ORDERED in Chambers, Miami, Florida, this _9th__ day of December, 2019.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: counsel of record